UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JASON WILEY                                              CIVIL ACTION

VERSUS                                                  NO: 05-3960

TRANSOCEAN OFFSHORE                                     SECTION: "S" (2)
DEEPWATER INC. ET AL.


<u>ORDER AND REASONS</u>

**IT IS HEREBY ORDERED** that the motion for partial summary judgment of

Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater, Inc. is **DENIED**.

(Document #101.)

## I. BACKGROUND

Jason Wiley was injured while employed as a roustabout by Transocean Offshore

Deepwater Drilling, Inc. and Transocean Deepwater, Inc. (Transocean) aboard the drillship

DISCOVERER DEEP SEAS.  At the time of his injury, Wiley and his crew were unbundling

and stacking drill pipe in the vessel's pipe bay.  Wiley sustained an injury to his right foot and

ankle as he attempted to maneuver the joint of pipe into position.

Dr. Robert Dehne performed closed reduction percutaneous screw fixation surgery on

May 11, 2005.  Dr. Dehne relocated to Austin, Texas, and referred Wiley to Dr. John Cazale for

the remainder of his treatment.  On November 8, 2006, Dr. Cazale removed the hardware from

Wiley's ankle.  Physical therapists, Richard Bunch and Joseph Shine, conducted functional

capacity evaluations and reached different conclusions regarding Wiley's ability to return to his

former position, performing "heavy" work.

Wiley filed a complaint against Transocean, alleging negligence and unseaworthiness,

pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law.  Wiley seeks maintenance

and cure until such time as he reaches maximum medical cure.  Transocean filed a motion for

partial summary judgment on the issue of future disability and Wiley's ability to return to work

offshore as a roustabout.

## II. DISCUSSION

### A.  Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to

the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is

entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805,

809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce

evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548,

2552 (1986).

### B.  Physical capacity to return to prior employment

Transocean contends that the medical evidence does not support Wiley's contention that

he suffers from any degree of residual disability or impairment and that he is capable of

returning to full activities in the heavy functional category.  Wiley contends that there are genuine issues of material fact which preclude partial summary judgment.

To support its argument, Transocean relies on the opinions of the treating physicians and an independent medical evaluation.  Dr. Dehne evaluated Wiley in Austin, Texas on June 9, 2006, and recommended that Wiley undergo surgery to remove the screws and an arthroscopic evaluation of the ankle.  Dr. Dehne described Wiley's discomfort from symptoms secondary to the crushing of the two lateral sensory nerves as tolerable, but recommended that he see a neurologist if a problem developed when Wiley became more active.  Dr. Dehne thought that Wiley would be able to return to his job within the heavy functional category description within four to six weeks after the hardware removal  and arthroscopic evaluation.  He also recommended a functional capacity evaluation.

Dr. Melvin Parnell conducted an independent medical evaluation of Wiley's right foot and ankle and issued a report on August 15, 2006.  Dr. Parnell agreed with Dr. Dehne's estimate that Wiley should be able to return to his regular duties within four to six weeks following surgery to remove the hardware, assuming a successful outcome.

Dr. Cazale testified in a deposition that he first saw Wiley on August 29, 2006.  Dr. Cazale opined, based on the physical examination and the information that he had before him on February 22, 2007, that he could not say to a reasonable medical certainty that Wiley could not go back to work offshore.  Dr. Cazale stated that Wiley's ankle was healed, and he was not subject to a fracture in the area where he removed the screws.  Dr. Cazale disagreed with Dr. Dehne's opinion that Wiley would be able to perform heavy manual labor six weeks after the

3

hardware was removed and thought that Wiley would be able to perform sedentary or light work at the six-week mark.  Dr. Cazale opined that it would be better if Wiley could perform work in a light or medium category, but he did not have any medical reason why Wiley could not try to perform heavy work to see whether he would have any symptoms.

Wiley argues that Dr. Cazale was very careful to restrict his opinion as to the type of work he could perform to a "medical standpoint."  He contends that the opinions of Dr. Dehne and Dr. Cazale were not definitive because they both recommended functional capacity evaluations.

A functional capacity evaluation was performed by Richard Bunch on February 23, 2007. Bunch concluded that Wiley could re-enter the work force in a medium work capacity, but that he did not have the residual functional capacity to return to heavy work because of his ankle impairment.  Transocean's expert, Joseph Shine, performed a functional capacity evaluation and concluded that Wiley could return to heavy work.

Because of the conflicting conclusions of the functional capacity evaluations, there are genuine issues of material fact concerning Wiley's capacity to return to a heavy level of work. Accordingly, Transocean's motion for partial summary judgment is denied.

New Orleans, Louisiana, this  15th day of October, 2007.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**